## CIRCUIT COURT OF ALLEGHANY COUNTY

Guy D. Griffith
and Gladys Griffith

v.

Nationwide Mutual Fire Ins. Co.

August 8, 1988

By JUDGE DUNCAN M. BYRD, JR.

At issue in this case is the construction and application of a homeowners policy issued by the defendant, Nationwide Mutual Fire Insurance Co., to Guy D. and Gladys Griffith. The essential facts are as follows. The Griffiths own approximately ten acres of real estate in the Callaghan area of Alleghany County. Since approximately 1963, when their residence was constructed on this property, the Griffiths have been insured by a standard homeowners policy. Located on the property is a barn and other structures. On August 25, 1987, the barn located on the premises as well as certain machinery and other personal property located within the structure were destroyed by fire.

As it relates to the barn, the policy provides that "we do not cover other structures: (a) used in whole or in part for business purposes." The policy describes business as "includes trade, profession, or occupation."

The more narrow issue as it relates to the structural loss in this case then becomes whether or not the acts of farming by Mr. Griffith constitute a business. If they do, his loss is excluded. If not, then certain coverage within the policy are applicable. In this regard, the relevant factors are as follows. Mr. Griffith grew up on a farm and since around 1965 has been engaged in acts of farming upon the premises in question. At the time

of the loss, Mr. Griffith was approximately sixty-one years of age, and his principal occupation has been a union electrician. However, at the time of the loss, he had been unemployed for approximately four months. His farming operation has grown gradually, and at the time of the loss, he had acquired two tractors, a hay bailer, miscellaneous tools, and approximately 1,000 bales of hay, all of which was located with the structure which was burned.

Mr. Griffith has an alfalfa field which he harvests three to four times a year for the purpose of producing hay for his livestock. During the winter of 1987, he wintered approximately twelve head of cattle, some of which were sold in March, 1988, and some of which were sold in April, 1988. He normally kept two to three head to keep the pasture down in the summer, and in addition, he had two pleasure horses which were also kept on the premises. Mr. Griffith does not have accurate figures as to the profit from his farm operation but estimates that he has a profit of $1,000.00 to $1,500.00 annually from his farming operation.

The general rule of construction applicable in this case is:

> The exceptions or provisos in a contract of fire insurance must be construed most strongly against those for whose benefit they are inserted. Clauses, conditions, or warranties contained in policies of fire insurance will be construed most strongly against the insurer where it may fairly be done, in order to avoid a forfeiture or to permit a recovery. In case of doubt fairly arising, the doubt will be resolved against the insurer, and where a clause, condition, or warranty admits of two interpretations equally reasonable, the one most favorable to the insured will be adopted.

10B M.J., *Insurance*, § 176.

While the Court cannot find any cases on point in Virginia or the various treatises available, I have located in 43 A.L.R. 3rd at 1096 an annotation entitled "Construction and application of 'business pursuits' exclusion

in provision in general liability policy." While there are some obvious distinctions, for purposes of this analysis, the applicable law appears to be synonymous. In this case, we analyze use of the premises for business purposes. On the other hand, the annotation analyzes business pursuits. *Camden Fire Ins. Ass'n. v. Johnson*, 294 S.E.2d 116 (W. Va. 1982). There the Supreme Court for West Virginia stated that:

> The majority view is that "business pursuits" comprehends two elements: continuity and profit motive. The reasoning of this approach was succinctly stated in *Home Insurance Co. v. Aurigemma*, 45 Misc. 2d 875, 879, 257 N.Y.S. 2d 980, 985 (1965):
>
> The meaning of the term "business pursuit" as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording. Webster's Third New International Dictionary, Unabridged, defines the "key words" in the subject policy as follows:
>
> *"Business.* a commercial or mercantile activity customarily engaged in as a means of livelihood." . . .
>
> *"Trade.* the business one practices or the work in which one engages regularly; one's calling: gainful employment: means of livelihood."
>
> *"Profession.* a calling requiring specialized knowledge and often requiring long and extensive preparation including instructions in skills and methods."
>
> *"Occupation.* that which principally takes up one's time, thought, and energies, especially one's regular business or employment, also whatever one follows as the means of making a livelihood."
>
> Finally, among lay dictionaries, Oxford Universal Dictionary, Third Edition (Rev.) defines these terms as follows:

"*Business.* stated occupation, profession, or trade . . . commercial transaction or engagement. . .

From all of the aforesaid authorities, it is clear that two elements are present in almost every definition, either expressly or by implication: *first, continuity, and secondly, the profit motive.* As to the first, there must be a "customary engagement" or a "stated occupation"; as to the latter, there must be shown to be such activity as a "means of livelihood"; "gainful employment"; "means of earning a living"; "procuring subsistence or profit"; "commercial transactions or engagements." (Emphasis in original.)

This definition of "business pursuits" as continuous or regular activity, done for the purpose of earning a profit or making a living has been adopted by a number of jurisdictions. *See, e.g., Crane v. State Farm Fire & Casualty Co.,* 14 Cal. App. 3d 727, 729, 92 Cal. Rptr. 621, *rev'd on other grounds,* 5 Cal. 3d 112, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971); *O'Connor v. Safeco Insurance Co. of North America, supra, State Farm Fire & Casualty Co. v. Moore,* 103 Ill. App. 3d 250, 58 Ill. Dec. 609, 430 N.E. 2d 641 (1981); *American Family Mutual Insurance Co. v. Bentley,* 170 Ind. App. 321, 352 N.E. 2d 860 (1976); *Allied Mutual Casualty Co. v. Askerud,* 254 Minn. 156, 94 N.W. 2d 534 (1959); *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 271 N.W. 2d 603 (1978); Annot. 48 A.L.R. 3d 1096 (1973).

*Id.*

The Court went on to state that "[i]t is well settled that the terms of an insurance policy should be understood in their plain, ordinary, and popular sense, not in a strained or philosophical sense."

Applying the factors in the case at bar to the above analysis, the Court finds that Mr. Griffith's farming operation is continuous and was engaged in as a means of livelihood and procuring subsistence of profit. There-

fore, the loss of the barn is excluded under the provisions of the policy.

As it relates to the personal property loss, the policy provides as follows:

> We cover personal property owned or used by an insured while it is anywhere in the world.
>
> . . .
>
> *Special Limits of Liability.* The special limit, shown on the Declarations for each numbered category, is the total limit for each occurrence for all property in that category. They do not increase the personal property limits of liability . . . .
>
> 8. business property except property not associated with a business conducted on the residence premises. The minimum limit is $500.
>
> *Property Not Covered.* We do not cover:
>
> . . .
>
> 3. motorized land vehicles, including motorized bicycles, except those used to service an insured's residence which are not licensed for road use.

In construing this language in light of this case, in the Court's opinion, the loss of the tractor valued at $7,500.00 should be excluded. The loss of the balance of the personal property destroyed by the fire in question which was located upon the resident premises is as follows:

| | |
|---|---:|
| Hay baler | $3,500.00 |
| Feed box | 46.60 |
| 2 shovels | 17.00 |
| 3 55 gal. metal barrels | 7.50 |
| 1000 bales alfalfa | 2,000.00 |
| 3 hay forks | 13.50 |
| 2 2 by 2 oak boards | 4.00 |
| 8 1 by 3 oak boards | 8.00 |
| | $5,589.10 |

However, in the Court's opinion, the "Special Limits of Liability" for this loss under the express language of the policy is $500.00. Therefore, in the Court's opinion, the Defendant is liable under the terms of its policy under Coverage C-Personal Property in the amount of $500.00.