PATTERSON, Judge.
In this consolidated appeal, the appellants challenge the final summary judgments entered in favor of Aetna Casualty & Surety Company (Aetna) and Joyce M. Tekavec. We affirm as to Tekavec and reverse as to Aetna.
This case arises from injuries sustained by Timothy Kirsch, Jr., age fourteen months, while attending an HRS licensed day care program operated in Tekavec’s home by her daughter, Stephanie Stahl. At approximately 8:00 a.m. on April 21, 1988, Timothy’s mother delivered him to Stahl’s custody at the Tekavec home. Upon the mother’s departure, Stahl began preparing breakfast for her own son and for Timothy. When Stahl left the kitchen to answer the doorbell, Timothy entered, climbed onto a stool, and pulled down a pan of hot bacon grease. He received disfiguring burns.
Pursuant to HRS regulations, the house contained child safety gates which, if properly in place, would have prevented Timothy from entering the kitchen. The Kirsches brought suit against Stahl and Tekavec, asserting negligent supervision as to Stahl and premises liability as to Stahl and Teka- *111 vec. Stahl and Tekavec, in turn, claimed coverage as insureds under a homeowner’s insurance policy issued to Tekavec by Aet-na. Aetna then sought and was granted the right to intervene in the action and brought a complaint for declaratory relief concerning coverage and naming Tekavec, Stahl and the Kirsches as defendants.
Ultimately, the Kirsches obtained a default judgment on the issue of liability against Stahl, while Tekavec obtained a final summary judgment in her favor against the Kirsches. Aetna obtained final summary judgment against Tekavec and the Kirsches on the issues of duty to defend and coverage. It is from these latter two judgments that these appeals are taken.
TEKAYEC’S SUMMARY JUDGMENT
The parties do not dispute Teka-vec’s lack of ownership interest or other participation in Stahl’s business. Her liability, if any, flows from her ownership of the premises. An owner of real property is not an insurer of the safety of persons who come upon the property and can be held responsible only when the plaintiff can establish that the owner had actual or constructive knowledge of a dangerous condition causing injury. Haynes v. Lloyd, 533 So.2d 944 (Fla. 5th DCA 1988). The dangerous condition in this case is not the hot skillet on the stove. The facts are uncon-troverted that when Tekavec left the home to go to her employment before Timothy arrived, the stool Timothy used was in the bathroom and no one was cooking in the kitchen. Tekavec’s liability, if any, necessarily must hinge on the child safety gate not being in place. The only evidence on this issue is Tekavec’s unrefuted affidavit that the gate blocking the kitchen was in place when she left the house. The granting of Tekavec’s summary judgment in her favor on the premises liability count was therefore proper and is affirmed.
AETNA’S SUMMARY JUDGMENT
The issue pertaining to Aetna turns on the business pursuits exclusion in Teka-vec’s homeowner’s policy which in pertinent part reads:
1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:
[[Image here]]
b. arising out of business pursuits of any insured or the rental or holding for rental of any parts of any premises by any insured.
There are, however, two exceptions to this exclusion:
(1) activities which are ordinarily incident to non-business pursuits; or
(2) the rental or holding for rental of a residence of yours:
[[Image here]]
(c) in part, as an office, school studio or private garage[.]
The Kirsches argue that this case fits within either of these exceptions and that factual issues preclude the granting of summary judgment. We agree.
THE “NONBUSINESS PURSUIT” EXCEPTION:
The immediate activity which occasioned Timothy’s injuries was Stahl’s cooking breakfast. It is uncontroverted that she performed this task on a daily basis for her own son and would have done so on the day of the accident whether or not Timothy had been there. Stahl and Mrs. Kirsch dispute whether the provision of Timothy’s breakfast was a program service for which the Kirsches paid. Stahl testified that it was. Mrs. Kirsch testified that it was not. Based on this evidence, a trier of fact could determine that the injury was caused by Stahl’s engaging in an activity separate and apart from her business pursuit. See Gulf Ins. Co. v. Tilley, 280 F.Supp. 60 (N.D.Ind.1967), aff'd, 393 F.2d 119 (7th Cir.1968); State Farm Fire & Casualty Co. v. Moore, 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981). The granting of summary judgment on this issue was therefore error.
*112 THE “SCHOOL RENTAL” EXCEPTION:
To prevail on this issue, the Kirsches must establish that Tekavec “rented” all or part of her premises to Stahl and that Stahl’s day care program was, in fact, a “school.” A formalized rental arrangement did not exist between Tekavec and Stahl. Stahl did not pay specific rent to her mother either to live in the house or to operate her day care business there. On the other hand, Stahl did contribute to the monthly utility expenses and occasionally gave money to assist Tekavec in making the mortgage payments. Both Tekavec and Stahl denied that a landlord/tenant relationship existed between them. Notwithstanding this disclaimer, Stahl’s occupancy of the premises was in the nature of being a “tenant.” The premises and the right to control them belonged to Tekavec. Stahl was permitted to reside there, and her occupancy was subject to termination by Tekavec at any time. Stahl, in fact, contributed money to the maintenance of the household. These facts could support a conclusion of an implied landlord/tenant relationship and the monies paid by Stahl could be construed as a form of rent.
The question of whether Stahl’s day care program qualifies as a “school” is more clearly defined. Stahl testified that her program provided education and schooling for the children who attended. Stahl was trained as a professional preschool teacher. She instructed the children on the alphabet, numbers, colors, and hand-eye coordination using a specialized program called Alpha Time. If we accept the definition of a school to be “a place where instruction is given,” the trier of fact could readily conclude that Stahl’s program was a preschool as opposed to a baby-sitting service. See Webster’s Third New International Dictionary (1986).
Having reached these conclusions, we are still confronted with the requirement that the premises be rented as a school. The mere fact that Stahl paid some form of “rent” to live in her mother’s house, standing alone, does not satisfy this requirement. In our view, the possibility of the Kirsches being able to meet this requirement is remote at best. Terms of exclusion in an insurance policy, however, are to be narrowly construed and uncertainties are to be resolved in favor of coverage. Quality Imports, Inc. v. St. Paul Fire & Marine Ins. Co., 566 So.2d 293 (Fla. 1st DCA 1990), rev. denied, 576 So.2d 290 (Fla.1991). In deference to the disputed issues of fact surrounding this issue and the possible inferences which could be drawn from those facts, we cannot say that, as a matter of law, the Kirsches should be denied their day in court on this issue. We, therefore, conclude that the granting of summary judgment on the basis of this exclusion was error.
Affirmed in part, reversed in part, and remanded.
SCHOONOVER, C.J., and LEHAN, J., concur.