WAYNE LEE THORNTON, Plaintiff-Appellee, *v.* BEN PAUL *et al.*, Defendants-Appellants.—(ILLINOIS FOUNDERS INSURANCE COMPANY, Garnishee-Appellant.)

Fourth District   Nos. 13425, 13655 cons.

Opinion filed August 8, 1977.

Howard Small, of Hayes & Moore, of Champaign, for appellants.

James Walker, of Bloomington, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an appeal by the defendants, Ben Paul and Ben's Den, Inc., from an order of the circuit court of McLean County denying their section 72 petition (Ill. Rev. Stat. 1973, ch. 110, par. 72) to vacate a default judgment of $30,000 in a personal injury action brought against them by the plaintiff, Wayne Thornton. There is also an appeal by the garnishee, Illinois Founders Insurance Company, of a garnishment order requiring Illinois Founders to pay the $30,000 judgment to the plaintiff.

This case arises from an altercation between plaintiff and defendant Ben Paul, an employee of Ben's Den, Inc., which occurred in the early morning hours of January 1, 1973, at Ben Paul's place of business. On January 17, 1973, Ben Paul was convicted of battery after a bench trial of stipulated facts and fined $500 and costs arising out of the same altercation.

On August 7, 1973, plaintiff, by his attorney, filed a complaint against the defendants in two counts: the first count against Ben Paul individually, and the second against Ben's Den, Inc., a corporation. The complaint alleged injury to the plaintiff's head as a result of Ben Paul's wilful and wanton misconduct. The complaint sought damages, both compensatory and punitive, for a total of $14,000. The defendants entered their appearance by private counsel.

On September 12, 1973, the defendants' liability insurance carrier, Illinois Founders Insurance Company, received a letter from plaintiff's attorney, including a copy of the complaint, and an order requiring defendants to plead on or before September 28, 1973. On September 24, 1973, notice was sent to Ben Paul and his attorney that Illinois Founders was denying coverage because the insurance policy excluded assault and

battery as an accepted coverage. This information was given to plaintiff's counsel, and on July 24, 1974, plaintiff, through his attorney, filed an amended complaint alleging negligence and sought damages against both the individual and the defendant corporation in the total of $30,000. A copy of this amended complaint was served upon private defense counsel, who then forwarded a copy of the complaint and notice to the carrier, where it was received on July 29, 1974, with an accompanying letter demanding that Illinois Founders undertake the defense of the amended complaint. The carrier, however, replied on August 19, 1974, that they still refused to defend on the theory of coverage, inasmuch as the transaction involved an assault and battery which was not covered by the policy. A copy of the letter denying coverage was given by defense counsel to plaintiff's counsel.

At some time between the filing of the amended complaint, July 24, 1974, and the entry of the default judgment on March 17, 1975, plaintiff and Ben Paul entered into an agreement through their attorneys. The agreement recited the facts of the claim and the denial of the coverage and concluded with the following three paragraphs:

"It is agreed as follows:

1. Plaintiff agrees to settle his right to pursue Ben Paul and Ben's Den, Inc., for any portion of a judgment which may be rendered in cause 73 LM 1451, whether such judgment is within or exceeds the limit of the insurance coverage, for the sum of $100.00, receipt of which is hereby acknowledged.

2. Plaintiff further agrees not to file or cause to be filed any memorandum of any judgment which might be obtained in the cause.

3. This agreement is not a release of Plaintiff's cause of action for his injury nor a satisfaction of any judgment which might be rendered, but is merely an agreement limiting the source of collection of any judgment which might be rendered, it being the intention of the parties that Plaintiff is free to pursue his suit to a judgment and to collect that judgment from Illinois Founders Insurance Company in any manner possible."

Concurrently with granting leave to file an amended complaint on July 24, 1974, the trial court directed the defendants to answer, or otherwise plead thereto, within 21 days. The plaintiff was directed to give the defendants notice of the amended pleading and also that plaintiff had withdrawn his jury demand. On December 23, the court ordered that the defendants demand a jury trial on or before January 3, 1975, if they so desired, and the court personally sent a copy of this order to attorneys for both parties.

On January 7, 1975, the trial court again ruled upon the defendants to

plead to the amended complaint on or before January 21 and set the cause for a bench trial on January 28 at 9 a.m., and copies were furnished to counsel. Despite these rulings, the defendants filed no answer to the amended complaint. On February 7, 1975, the court reset the bench trial for March 17 at 10:30 a.m., and on that day, entered an order of default on the issues of liability and conducted a hearing which consisted of the testimony of the plaintiff concerning his injuries and his expenses subsequent to the transaction with the defendant, Ben Paul. Based upon the complaint and the evidence of the plaintiff and without knowledge of the agreement between the parties, as above set forth, the court entered a judgment in behalf of the plaintiff and against the defendants for the full amount claimed in the complaint, *i.e.*, $30,000.

More than 30 days thereafter, on April 16, 1975, plaintiff instituted a garnishment proceeding against Illinois Founders by filing an affidavit in garnishment. Illinois Founders was served with the garnishment summons and a hearing thereon was held June 16 wherein Illinois Founders presented evidence tending to establish that there was a policy defense because the policy excluded coverage for assault and battery. At the conclusion of the hearing, the trial court ordered the garnishee, Illinois Founders, to pay plaintiff the judgment in the amount of $30,000 and his costs of suit.

On July 2, after the conclusion of the garnishment proceedings and after notice of appeal was filed therein, the defendants by the attorneys for the insurance carrier filed a section 72 petition to vacate the default judgment. An amended petition to vacate was filed and a hearing held on November 25 at which all of the above evidence was presented. The amended petition was denied by the trial court on the grounds that defendants were neither diligent in defending the original cause before judgment nor diligent in bringing their section 72 petition for they only began asserting defendants' rights after an adverse ruling on a policy defense in the garnishment proceeding.

■■■ On the basis of the above facts, the law appears to be well settled. A public liability insurance carrier has a duty to its insureds to defend the insureds against any claim in which the complaint states facts bringing the claim within the policy coverage, whether or not independent investigation by the carrier indicates that the claim is, in fact, false and is outside of the coverage. The carrier is protected by two procedures. First, it can take a reservation of rights' agreement with the insured and this having been signed by both the insured and the carrier, the carrier can then come in and defend the action and later claim want of coverage after all of the facts have been developed at the trial. The other alternative is to file a complaint for declaratory judgment naming both the claimant and the insured as parties, presenting the facts and the policy

coverage to the court and obtaining a ruling as to coverage. However, when the carrier declines to do either of the above, but denies coverage and denies representation under the policy, and the matter proceeds to a judgment against the named insured, the insurance carrier is then estopped to raise coverage questions in a subsequent garnishment action brought upon the judgment arising out of the original claim.

In *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, the court states:

"The courts of this State have determined that the liability insurer's duty to defend a suit in such case is determined by the allegations of the complaint. If the complaint states facts which bring the claim potentially within the coverage of the policy, the insurer is obligated to defend. It can safely and justifiably refuse to defend only when the allegations of the complaint clearly show that the claim is beyond the policy coverage. When an insurer unjustifiably refuses to afford a defense for the insured, it is later estopped from raising the defense of noncoverage in a suit against it to enforce a judgment against the insured. [Citations.]

\* \* \*

As pointed out in the *Sims* case (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123), and observed again in *Palmer v. Sunberg* [71 Ill. App. 2d 22, 217 N.E.2d 463], the insurer is not left without an opportunity to assert noncoverage since it may defend on the reservation of rights (if the insured will agree to such reservation) or the insurer may seek a declaration of its rights and duties in a separate declaratory judgment action before or pending trial of the original action instituted by plaintiff against the insured." 39 Ill. App. 3d 944, 947-949, 352 N.E.2d 60.

■■ An agreement per se between the claimant and the insured where the carrier is denying coverage, stipulating that the plaintiff will not execute against property of the insured other than the limits of the insurance policy in the event of a recovery against defendants in the principal action, has been approved and is not contrary to public policy. *Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Elas.*

■■ Defendants rely upon *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23. *Gatto* is distinguishable in its facts. There, Gatto sued Walgreen for personal injuries when a roof collapsed. Walgreen filed a third-party action against Calumet Flexicore Corporation, the roofing contractor. (The statute of limitations barred any action by plaintiffs against Calumet.) During the course of the trial, plaintiff and Walgreen

entered into an agreement not to execute for a consideration of $80,000. This was not disclosed to the court or the third party and resulted in verdicts and judgments for plaintiffs against Walgreen for $120,000, and for Walgreen against Calumet in like amount. The supreme court found the document had settled all claims between Gatto and Walgreen and the remainder of the trial was a sham and fraud on the court. Such is not the situation before us. Here the agreement merely exempted from execution certain assets of the defendant. Since this agreement was not relevant to the question of either liability or damages, presentation to, and/or approval by, the trial court was unnecessary.

The ruling of the trial court on the section 72 petition and its judgment in the garnishment proceedings should be affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.